**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Microsoft Corporation and Microsoft Licensing GP, | |
| Plaintiffs, | **AMENDED COMPLAINT** |
| -against- | No. 14-CV-6039-JSR |
| Samsung Electronics Co., Ltd., | |
| Defendant. | <u>JURY TRIAL DEMANDED</u> |

Plaintiffs Microsoft Corporation and Microsoft Licensing GP (referred to hereinafter as "Microsoft," either individually or collectively), by and through their attorneys, for their Complaint against Defendant Samsung Electronics Co., Ltd. (hereinafter "Samsung"), allege as follows:

## NATURE OF THE ACTION

1.     This is an action for breach of a contract negotiated at arms length between two sophisticated corporations and for declaratory relief necessary to prevent Samsung from violating its substantial ongoing obligations under the contract. In September 2011, Microsoft and Samsung entered into a definitive agreement to cross-license the patent portfolios of both companies, known as the "Confidential Patent License Agreement" (referred to herein as the "License Agreement" or the "PLA"). Under the License Agreement, Samsung agreed to make patent royalty payments to Microsoft for a period of seven fiscal years, in exchange for the right to use patented Microsoft technology in Samsung smartphones and tablets that use the Android operating system. Microsoft also agreed to provide certain annual credits to Samsung in return for a patent license relating to products made by Microsoft.

2.      Samsung breached the License Agreement last fall by refusing to make its Fiscal Year 2 royalty payment on time and then refusing to pay interest on its late payment, and is threatening to breach the License Agreement again with respect to its ongoing royalty payment obligations for Fiscal Year 3 and thereafter, primarily because (Samsung claims) of the recent acquisition by Microsoft's subsidiaries of the Nokia Devices & Services business (the "Nokia Acquisition").  In this action, Microsoft seeks, among other things, a declaratory judgment that (a) the license rights granted by Samsung under the Agreement cover the subsidiaries and assets of the business units/divisions acquired through the Nokia Acquisition, (b) the Nokia Acquisition did not constitute a breach of the anti-assignment provisions of the License Agreement or of a separate Confidential Business Collaboration Agreement between Microsoft Corporation and Samsung under which the parties agreed to cooperate in the development and marketing of Windows smartphones (referred to herein as the "Collaboration Agreement" or the "BCA"), (c) the Nokia Acquisition does not give Samsung the right to terminate the License Agreement or relieve Samsung of its ongoing obligation to make substantial future royalty payments to Microsoft under that Agreement pursuant to its terms, and (d) disputes concerning the validity, construction or performance of the License Agreement shall be resolved under U.S. law in this Court, as the parties agreed in the License Agreement.  Microsoft also seeks to enjoin Samsung from seeking, through a lawsuit or otherwise, damages for infringement, royalty payments from Microsoft, or any other relief, to the extent such claims or requests for royalties or other relief are based on the Nokia Acquisition, and from attempting to terminate or modify the License Agreement due to the Nokia Acquisition.

3.      In addition, Microsoft seeks to compel Samsung to pay contractually-required interest in excess of $6.9 million to Microsoft for Samsung's late payment last year of over $1

billion that it admittedly owed to Microsoft for Fiscal Year 2 under the License Agreement.

4.      Microsoft has filed this action in this Court because it has diversity jurisdiction and the parties agreed in the License Agreement that all disputes concerning the "validity, construction and performance" of the License Agreement shall be filed here and determined first by the federal laws of the United States and second in accordance with the laws of the State of New York. License Agreement, § 7.6.

5.      Microsoft is a worldwide leader in computer software, services, and solutions for businesses and consumers. Among other things, it develops and licenses operating systems (such as "Windows") and other software for a broad array of computing devices, including, but not limited to, smartphones and computer tablets.

6.      Microsoft's continued success depends in substantial part on its ability to maintain and protect the proprietary technology it creates through its investments in research and development. It has developed innovative licensing programs whereby competitors and others may license Microsoft's patent-protected technology in return for royalty payments, other consideration, or both.

7.      One such program is the Android patent licensing program. Android, which is operating system software designed for mobile devices, infringes many Microsoft patents that were obtained by Microsoft in the United States and elsewhere well before Android was launched. Rather than exercise its legal right to exclude Android-based devices from practicing that technology, Microsoft licenses its patent portfolio to companies that utilize Android, including Samsung -- the world's largest producer of Android-based smartphones and tablets.

8.      Samsung is a multinational corporation that, among other things, develops, manufactures, distributes and sells, in this jurisdiction and throughout the world, mobile devices,

related software, and various components used in mobile devices.  Samsung is the world's largest producer of smartphones and tablets that use the Android operating system, and it also manufactures and sells a relatively small number of smartphones that use Microsoft's Windows operating system.

9.     In September 2011, after sustained arms-length negotiations, Samsung and Microsoft entered into the License Agreement.  In exchange for a license to use Microsoft's patents in Samsung's Android-based smartphones and tablets, Samsung agreed to pay Microsoft royalties for a period of seven years.  The royalties are calculated based upon, among other things, the volume of Android-based smartphones and tablets sold by Samsung each fiscal year. Also, under the License Agreement, Microsoft agreed to provide Samsung with certain specified credits, including a royalty credit for a license to use certain of Samsung's patents during the same period.

10.     During the first Fiscal Year of the License Agreement, Samsung made the royalty payments required by the License Agreement, which were partially offset by Microsoft's cross-license obligations.  For Fiscal Year 2 of the License Agreement, Samsung reported to Microsoft, in a written Royalty Report dated August 29, 2013, that Samsung owed over $1 billion in royalties under the Agreement.  Microsoft agreed; the FY2 net royalty payment owed by Samsung was therefore undisputed.

11.     Microsoft publicly announced its intention to acquire the Nokia Corporation's Devices & Services business on September 3, 2013, which was after Samsung's FY2 Royalty Report was submitted to Microsoft but before the due date for Samsung's payment of its undisputed FY2 royalties under the License Agreement. The Nokia Acquisition, which followed a pre-existing cooperation arrangement between Nokia and Microsoft, will enable Microsoft (and

its subsidiaries and business units/divisions) to manufacture Windows-based smartphones.

12.     Upon hearing the formal announcement of the intended Nokia Acquisition, which had been the subject of industry press speculation for more than two years, Samsung claimed that the Nokia Acquisition would breach the License Agreement in various ways. Samsung also refused to make the undisputed FY2 royalty payment it owed to Microsoft on October 11, 2013, the date it was due.

13.     On November 29, 2013, Samsung finally paid Microsoft the previously agreed-to FY2 net royalty amount (minus certain funds for taxes), while preserving all of its legal positions. However, despite Microsoft's repeated requests for contractually-mandated interest on the undisputed FY2 net royalty amount owed to Microsoft, Samsung has refused to make the interest payment it owes, which amounts to more than $6.9 million.

14.     In addition, both before Samsung made its late FY2 payment to Microsoft under the License Agreement, and to this day, Samsung has claimed that smartphone products made or sold by Microsoft and its subsidiaries after the Nokia Acquisition are not covered by the License Agreement and that Samsung is therefore entitled to seek damages for infringement (including royalties) from Microsoft following the close of the Nokia Acquisition. To the contrary, as Microsoft has repeatedly reminded Samsung, the License Agreement contains explicit provisions (Sections 3.1 and 3.2) that grant a license to the patents covered by the License Agreement to both Samsung's and Microsoft's after-acquired subsidiaries, assets and/or and business units/divisions -- such as those acquired through the Nokia Acquisition -- and thereby bars any such infringement claims.

15.     Further, both before Samsung made its late FY2 payment to Microsoft under the License Agreement, and to this day, Samsung has claimed that the Nokia Acquisition breaches

the anti-assignment provisions of the Agreements between the parties, which provide grounds for termination of the Agreements. To the contrary, as Microsoft has repeatedly reminded Samsung: (a) the Nokia Acquisition is exactly the kind of acquisition that is expressly permitted by Sections 3.1 and 3.2 of the License Agreement, (b) it does not breach the anti-assignment provisions of either the License Agreement or the Collaboration Agreement (or any other provision of either Agreement), including because it was a permitted business acquisition under those Agreements, and (c) it does not give Samsung the right to terminate or modify the License Agreement and thus avoid billions of dollars in contractually-negotiated future royalty payments to Microsoft for Samsung's Android-based products that would otherwise infringe Microsoft's patents. Nevertheless, as a result of this dispute and because of Samsung's refusal to abandon its erroneous legal positions, Microsoft faces the threat of unilateral termination of the License Agreement and non-payment, or delinquent payment, of the royalties Samsung owes under the License Agreement for Fiscal Year 3 (which ended on June 30, 2014) and subsequent years.

16.    Moreover, Samsung has taken extraordinary steps to avoid its future obligations to pay the patent licensing royalties to Microsoft that it agreed to pay in the License Agreement. Instead of asking this Court to construe its post-Nokia Acquisition rights and patent royalty payment obligations under its Agreements with Microsoft -- as the parties explicitly agreed to do for such disputes -- Samsung has asked the Korean competition authorities to change the parties' private contract by reducing or eliminating Samsung's contractually-mandated Android patent royalty payments for Microsoft's patents, *almost all of which were granted by countries other than Korea and used in products sold to consumers in countries other than Korea.* Thus, Samsung is attempting to convert a commercial contract dispute governed by U.S. law into a Korean regulatory issue. Microsoft, in accordance with the dispute resolution procedure set

forth in the Agreements, instead is invoking the agreed-upon jurisdiction of this Court to enforce the clear contractual provisions of the License Agreement that Samsung is attempting to disregard -- an action that is ripe and necessary due to Samsung's repeated assertions that the Nokia Acquisition breaches the License Agreement and/or the Collaboration Agreement and relieves Samsung of its ongoing payment obligations.

## PARTIES

17.     Plaintiff Microsoft Corporation is a Washington corporation, with its principal place of business at One Microsoft Way, Redmond, Washington 98052.

18.     Plaintiff Microsoft Licensing GP is a Nevada general partnership, with its principal place of business at 6100 Neil Road, Suite 100, Reno, Nevada 89511.

19.     Defendant Samsung Electronics Co., Ltd. is a Korean corporation, with its principal place of business at 416, Maetan-3-dong, Yeongtong-gu, Suwon-si, Gyeongigi-do, 443-742, South Korea.

## JURISDICTION AND VENUE

20.     The Court has jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, excluding interest and costs, and this action is between Plaintiffs, citizens of the United States, and Defendant, a citizen of Korea.   In addition, under 28 U.S.C. §§ 2201-2202, a current, actual and justiciable controversy exists between the parties, making a declaratory judgment action appropriate.

21.     Venue is proper within this District under 28 U.S.C. §§ 1391(b)(1) and (c)(2). Moreover, under Section 7.6 of the License Agreement and Section 9.5 of the Collaboration Agreement, Samsung has irrevocably consented to personal jurisdiction in this forum and has agreed to designate this District as the exclusive venue for resolving claims, such as those at

issue here, which concern the validity, construction or performance of the License Agreement and/or arise under the Collaboration Agreement.

## GENERAL ALLEGATIONS

22.    An important reason for Microsoft's success in the technology industry is its annual investment of billions of dollars in research and development. Microsoft's efforts have yielded one of the world's largest and most valuable patent portfolios.

23.    Between July 1, 2010 and June 30, 2013, Microsoft invested approximately $29 billion in research and development, including mobile-related technology. As of June 30, 2013, Microsoft had more than 73,000 issued and pending patents worldwide.

24.    In 2003, Microsoft launched a licensing program that allows licensees access to this patent portfolio. Since then, Microsoft has entered into more than 1,100 license agreements and continues to develop licensing programs that allow customers, partners, and competitors access to its patent portfolio.

### Android Patent Licensing Program

25.    Android is operating system software for mobile devices that was commercially launched in 2008 and is distributed by Google, Inc. (hereinafter "Google"). Android-based smartphones and tablets, related software, and various components infringe many of Microsoft's patents.

26.    As a result, Microsoft established an Android patent licensing program through which companies using the Android operating system may license Microsoft's patent portfolio. The first company to enter into a license under that program was HTC Corp. on April 27, 2010. Today, Samsung and more than 25 other companies participate in the Android patent licensing program, including:  Acer Inc.; Alutrek, Inc.; Barnes & Noble, Inc.; Coby Electronics Corp.;

Compal Electronics, Inc.; EINS SE; General Dynamics Itronix; Hoeft & Wessel AG; Hon Hai Precision Industry Co., Ltd.; Nikon Corp.; Onkyo Corp.; Pegatron Corp.; Quanta Computer Inc.; Velocity Micro, Inc.; ViewSonic Corp.; Wistron Corp.; and ZTE Corp.  By virtue of the Android patent licensing program, approximately 80% of Android-based smartphones sold in the U.S. are licensed to use Microsoft's patents.

27.     Since the commencement of the Android patent licensing program, the number of Android-based mobile devices has risen sharply. As of June 30, 2013, Android-based smartphones represented nearly 80% of all smartphones worldwide.

### The Samsung/Microsoft License Agreement and Collaboration Agreement

28.     Samsung's first Android-based smartphone, Galaxy I7500, was launched in 2009. That device, as well as subsequent Android-based smartphones and tablets in Samsung's Galaxy series, relied upon the Android platform and thus infringe Microsoft's patents.

29.     On or about September 28, 2011, in order to settle Microsoft's claims for patent infringement without the necessity of litigation and to establish a broad cross-license between the parties going forward, Samsung and Microsoft entered into the License Agreement, effective as of July 1, 2011.  License Agreement, §§ 2.1, 3.1.  Both Microsoft and Samsung, which are highly sophisticated businesses, were represented by skilled counsel throughout the process of negotiating, drafting, and executing the License Agreement.  Moreover, at the time the parties entered into the License Agreement, Microsoft had publicly announced a strategic partnership with Nokia as described below.

30.     Under the License Agreement, Microsoft licensed its patents to Samsung for seven years, so that Samsung could lawfully sell Android smartphones and tablets, which would otherwise infringe Microsoft's patents.  License Agreement §§ 3.1, 5.1.

31.     The license covers all Samsung smartphones or tablets that include substantial portions of Google's Android platform or Google's Chrome or Chromium platforms.   License Agreement § 1.

32.     In return for access to Microsoft's proprietary technology, Samsung agreed to pay Microsoft royalties.   License Agreement §§ 4.1, 4.2.2.   Samsung paid the Fiscal Year 1 royalty as agreed.   For Fiscal Years 2 through 7, the parties agreed that the amount of royalties owed by Samsung was (and is) to be determined by applying a certain royalty to each Android smartphone or tablet sold by Samsung.   License Agreement § 4.2.2.   The amount of the royalty varies based upon the amount Samsung charges for each of the otherwise infringing devices. License Agreement §§ 4.2.2., 1.

33.     The License Agreement requires that Samsung make any and all payments due to Microsoft under the License Agreement in the currency of the United States in immediately available funds.   License Agreement § 4.3.

34.     The License Agreement also contains a cross-license.     Samsung licensed its patents to Microsoft and its subsidiaries for seven years for use in the software, products and services of Microsoft and its subsidiaries.   License Agreement §§ 3.1, 5.1.   Microsoft pays an annual, preset royalty to use Samsung's patents, the amount of which is set out in Exhibit B to the License Agreement ("Microsoft License Fee Credit").   License Agreement § 4.2.1 & Ex. B to the License Agreement.   That royalty is credited against the royalties Samsung owes Microsoft each year.   License Agreement § 4.2.1.

35.     On the same day that the parties executed the License Agreement, Samsung and Microsoft Corporation also entered into a business Collaboration Agreement, or BCA.   In return for agreed-upon efforts by Samsung to develop Samsung Windows smartphones and tablets (and

Microsoft's search services), the Collaboration Agreement provides Samsung with a certain annual credit and potential reimbursements for Samsung Windows smartphone and tablet marketing expenses. Collaboration Agreement § 3.1 & Exs. B-D thereto. Both Microsoft Corporation and Samsung were represented by skilled counsel throughout the process of negotiating, drafting, and executing the Collaboration Agreement.

36.     Because it was anticipated that the License Agreement would result in an annual net payment from Samsung to Microsoft and the Collaboration Agreement would result in an annual net payment from Microsoft to Samsung, the parties agreed to consolidate the invoicing process under the License and Collaboration Agreements.   For the years FY2 through FY7, Samsung must provide Microsoft with a "Royalty and Credit Calculation Report" (herein referred to as the "Royalty Report"), after which Microsoft, if it does not dispute the amount stated in the Royalty Report, must provide Samsung with an "Annual Invoice" to be paid by Samsung within 30 days. License Agreement §§ 4.2.3, 4.3 & Ex. A thereto; Collaboration Agreement §§ 3.1.4, 3.2.1, 3.2.2 & Ex. F thereto; Invoice from Microsoft to Samsung dated September 11, 2013 (hereinafter "2013 Annual Invoice").

37.     Both the License Agreement and the Collaboration Agreement contain binding integration clauses. The License Agreement, for example, states that "this Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes any and all prior or contemporaneous communications, whether written or oral, regarding such subject matter, including any prior letters of intent or term sheets." License Agreement, § 7.3; *see also* Collaboration Agreement, § 9.12.

### Acquisition of the Nokia Devices & Services Business

38.     In February 2011 (more than six months before the License Agreement was

signed), Microsoft announced a strategic partnership with Nokia, through which the two companies would work closely together to develop, produce and sell Windows smartphones and related software, services and applications.

39.   On September 3, 2013, Microsoft announced its intention to acquire substantially all of Nokia Corporation's Devices & Services business, as a next step in the publicly announced strategic partnership with Nokia.   The announced Nokia Acquisition included only certain of Nokia's subsidiaries and assets -- namely the Nokia Devices & Services business -- and did not include other substantial portions of Nokia (which remains a fully-operational and distinct corporation).   The Nokia Acquisition was accomplished through a stock and asset acquisition (as opposed to a merger).   Following the closing of that transaction on April 25, 2014, the entities formerly owned by Nokia became "Subsidiaries" of Microsoft within the meaning of the License Agreement.

40.   Under Section 3.1 of the Microsoft/Samsung License Agreement, each Party grants a license under its respective Licensed Patents to the other Party and the other Party's Subsidiaries.   The License Agreement also contains the following additional provision (Section 3.2):

> 3.2   **New Subsidiary License**.  If a Subsidiary or business unit/division is acquired by a Party after the Effective Date, the Subsidiary or business unit/division shall be deemed a Grantee under Section 3.1 and the License granted under Section 3.1 shall extend to such Subsidiary or business unit/division, but effective only as of the date of the acquisition.

These provisions make it clear that the license rights automatically extend to any new Subsidiary and the assets of any business unit/division acquired by either Microsoft or Samsung or their Subsidiaries during the term of the License Agreement.

41.   The subsidiaries and assets of the business formerly owned by Nokia and acquired

in the Nokia Acquisition are plainly covered by Sections 3.1 and 3.2 of the License Agreement, so that they are "Grantees" that have the benefit of the license rights granted under the License Agreement following the date of the acquisition.

42.     The License Agreement also contains an anti-assignment provision in Section 7.7, but neither that provision, nor any other provision of the License Agreement, is breached by the acquisition of new subsidiaries and the assets of a business through a stock and asset purchase. Indeed, as discussed above, the Nokia Acquisition is precisely the kind of transaction that is explicitly permitted by Sections 3.1 and 3.2 of the License Agreement.  Because the Nokia Acquisition did not breach the License Agreement, Samsung has no right to terminate or modify the License Agreement due to the Nokia Acquisition.

43.     The Collaboration Agreement also contains a provision (Section 9.7) that states that a "party" may not "assign" the Collaboration Agreement, or any rights or obligations thereunder. But the Nokia Acquisition did not constitute an "assignment" by Microsoft Corporation under Section 9.7. Neither that provision, nor any other provision of the Collaboration Agreement, is breached by the acquisition of new subsidiaries and the assets of a business through a stock and asset purchase.  To the contrary, as discussed above, the Nokia Acquisition is the kind of transaction that is explicitly permitted by Sections 3.1 and 3.2 of the License Agreement.

44.     Because the acquisition of the Nokia Devices & Services Business did not breach Section 9.7 of the Collaboration Agreement, Samsung may not terminate the Collaboration Agreement under Section 9.7 due to that Acquisition.  Accordingly, Section 8.5 of the Collaboration Agreement -- which allows Samsung to terminate the *License* Agreement *only* if Section 9.7 of the Collaboration Agreement is breached and the *Collaboration* Agreement is

terminated due to that breach -- does *not* give Samsung the right to terminate the License Agreement.   In short, no provision of either the License Agreement or the Collaboration Agreement gives Samsung the right to terminate the License Agreement due to the Nokia Acquisition.

### Samsung's 2013 Breach of the License Agreement by Failing to Pay Interest Owed

45.     On or about August 29, 2013, Samsung submitted its Royalty Report to Microsoft for Fiscal Year 2, namely the period July 1, 2012 through June 30, 2013.   Due to the unit volumes of Android products that Samsung sold during the relevant period (and the application of certain credits), *Samsung* calculated the resulting royalty it owed to Microsoft for the Fiscal Year to be $1,041,642,161.25.   Royalty Report dated August 29, 2013 (hereinafter "2013 Royalty Report").   Samsung submitted its 2013 Royalty Report with an attestation that it was complete and correct.

46.     Microsoft did not, and does not, dispute Samsung's 2013 Royalty Report. Accordingly, on September 11, 2013, Microsoft provided Samsung with the 2013 Annual Invoice agreeing with Samsung's stated amount due and requesting payment in the amount of $1,041,642,161.25.   Samsung was required to make this payment to Microsoft (minus certain taxes) no later than thirty (30) days from receipt of the 2013 Annual Invoice -- *i.e.*, by October 11, 2013.

47.     At no time prior to or accompanying its 2013 Royalty Report did Samsung raise any objection to its obligation to pay the royalties to Microsoft that *Samsung* determined it owed. Shortly after Microsoft's announcement of the Nokia Acquisition, however, Samsung began to assert an ever-expanding list of reasons why the announced acquisition allegedly violated the License Agreement and/or the Collaboration Agreement.   In fact, allegedly due to the Nokia

Acquisition, Samsung did not pay the undisputed FY2 royalty amount due on October 11, 2013 as required. Instead, for seven weeks thereafter, Samsung refused to make the payment and continued to assert baseless justifications for its failure to pay. Microsoft repeatedly demanded full payment of the FY2 amount owed, with contractually-required interest. Finally, on November 29, 2013, Samsung paid the undisputed FY2 amount owed (with a reservation of its legal rights and positions), minus certain taxes due. Samsung did not, however, pay the interest required by the License Agreement and demanded by Microsoft, and still has not made that interest payment.

48.    The License Agreement states that "any fee, royalty or other amount not paid when due and otherwise in accordance with this Section ... shall bear interest at the rate of five percent (5%) per annum or the highest rate permitted by applicable law, whichever is less, prorated from the due date until the date received by Microsoft ..." License Agreement § 4.5. Samsung's FY2 net royalty payment of $1,041,642,161.25 was due on October 11, 2013 and was not made until November 29, 2013 -- 49 days late (and it did not include any interest). Consequently, the unpaid interest due is $6,991,844.64.

### Samsung's Continuing Meritless Claims Concerning the Nokia Acquisition and Its Ongoing Obligation to Pay Royalties Under the License Agreement

49.    Two days before Samsung made its payment of the FY2 net royalty amount (without interest), it sent Microsoft a letter, dated November 27, 2013, in which it set forth its positions (described in paragraphs 14-15 above) on the legal issues raised in this Complaint, which are sharply contested by Microsoft. Samsung has reaffirmed those positions in subsequent communications this year, including through letters dated April 25, 2014 and June 13, 2014.

50.    Microsoft has informed Samsung that its positions are incorrect as to the critical contract interpretation issues concerning the effect of the Nokia Acquisition on the parties' rights

and obligations under the License Agreement and the Collaboration Agreement.  For example, Microsoft sent Samsung a letter, dated April 17, 2014, that reiterated Microsoft's demand for interest on Samsung's FY2 net royalty payment and stated, in relevant part, that it remains Microsoft's position that (a) the PLA covers the entities acquired in the Nokia Acquisition, and Samsung has no right to seek infringement damages, a reduction in future royalties owed, or any other relief from Microsoft as the result of the closing of the Nokia Acquisition,[1] (b) the Nokia Acquisition is not prohibited by Section 9.7 of the Collaboration Agreement or by any provision of the License Agreement, and its closing does not give Samsung the right to terminate the License Agreement or the right to any other legal remedy, and (c) the current arrangements under the License Agreement (including royalty payments) will continue following the closing of the Nokia Acquisition (unless modified by a future agreement).

51.     To date, the parties remain in sharp disagreement concerning their rights and obligations under the License Agreement and the relevant anti-assignment/termination provisions of the License Agreement and the Collaboration Agreement.  As a result of this dispute, absent declaratory and injunctive relief from this Court, Microsoft is threatened with patent infringement claims by Samsung relating to the Nokia Acquisition (despite the clear language of Sections 3.1 and 3.2 of the License Agreement), with a prohibited unilateral termination of the License Agreement by Samsung (with no basis under the anti-assignment clauses or any other contract provision), and with non-payment, or delinquent payment, of the royalties Samsung owes under the License Agreement for Fiscal Year 3 (which ended on June 30, 2014) and subsequent years.  Samsung, using the Nokia Acquisition as an excuse, has taken

---

[1] Patent infringement claims by Samsung against Microsoft for the acquired Nokia products would be without merit for reasons other than the bar imposed by the License Agreement, and Microsoft preserves its right to assert all defenses to such claims if Samsung asserts them.

positions on these issues that are unsupported by the applicable language of the Agreements in order to escape the five remaining years of royalty payments -- amounting to billions of dollars -- that it owes or will owe to Microsoft under the License Agreement for FY3 to FY7.

**COUNT ONE: BREACH OF CONTRACT**

52.     Microsoft incorporates by reference as if fully set forth herein each of its allegations set forth in Paragraphs 1 to 51 above.

53.     As described above, Samsung entered into a License Agreement with Microsoft, whereby Samsung agreed to make a net royalty payment for Fiscal Year 2 by a specified date and to pay interest if the payment was late.

54.     Microsoft fully complied with its obligations under the License Agreement during Fiscal Year 2, which ended on June 30, 2013.  Microsoft did not dispute Samsung's 2013 Royalty Report containing Samsung's statement of the amount due, namely $1,041,642,161.25, and accordingly issued the 2013 Annual Invoice in the same amount on September 11, 2013, which made Samsung's payment due no later than October 11, 2013.   Samsung failed to make its undisputed FY 2 net royalty payment on October 11, 2013. The payment was finally made, minus certain taxes, on November 29, 2013.

55.     The License Agreement explicitly provides for interest on such late payments at the rate of five percent (5%) per annum or the highest rate permitted by applicable law, whichever is less, prorated from the due date until the date received by Microsoft.  Samsung was 49 days late in its FY 2 payment, resulting in interest due of $6,991,844.64.  Microsoft has demanded payment of the interest due as required by the License Agreement, but Samsung has not made the required payment.

56.     By failing to pay the interest due on its late royalty payment for Fiscal Year 2,

Samsung breached a contractual obligation owed to Microsoft.

57.     As a direct and proximate cause of Samsung's conduct, Microsoft has been damaged in the amount of $6,991,844.64.

58.     Microsoft is not terminating or rescinding the License Agreement, but rather sues to recover the losses suffered from Samsung's breach of its obligation to pay interest.

## COUNT TWO:   DECLARATORY JUDGMENT (28 U.S.C. §§ 2201-2202)

59.     Microsoft incorporates by reference as if fully set forth herein each of its allegations set forth in Paragraphs 1 to 58 above.

60.     As described in Paragraphs 49-51 above, an actual and justiciable controversy exists between Microsoft and Samsung with respect to their rights and obligations, in light of the Nokia Acquisition, under Sections 3.1 and 3.2 of the License Agreement and under the relevant anti-assignment and termination provisions of the License Agreement and the Collaboration Agreement.

61.     Absent the declaratory and injunctive relief requested from this Court, Microsoft faces the imminent risk of patent infringement claims by Samsung relating to the Nokia Acquisition (despite the clear language of Sections 3.1 and 3.2 of the License Agreement) and of a prohibited unilateral termination of the License Agreement by Samsung (with no basis under the anti-assignment provisions or any other contract provision), as part of Samsung's efforts to escape the five remaining years of contractually-required royalty payments -- payments that will amount to billions of dollars.

62.     Microsoft therefore seeks entry of a judgment declaring that:

(a)     pursuant to Sections 3.1 and 3.2 of the License Agreement, the entities, assets and/or business units/divisions acquired in the Nokia Acquisition are "Grantees" under the

License Agreement and are covered by the license granted in Section 3.1 of the License Agreement;

      (b)     with respect to the Samsung patents licensed in the License Agreement, the Nokia Acquisition does not give Samsung any basis to assert against Microsoft or any of its subsidiaries any patent infringement claims or to seek injunctive relief or additional royalties beyond those specified in the License Agreement;

      (c)     the Nokia Acquisition does not violate the anti-assignment provisions of either the License Agreement or the Collaboration Agreement;

      (d)     neither Sections 9.7 and/or 8.5 of the Collaboration Agreement, nor any provision of that Agreement or the License Agreement, provides Samsung with the right to terminate or modify the License Agreement due to the Nokia Acquisition;

      (e)     the License Agreement remains in effect following the Nokia Acquisition, and Samsung therefore must pay Microsoft all royalty payments required by the License Agreement (with offsets only as permitted under that Agreement and the Collaboration Agreement), including for FY3 (defined in the License Agreement as the Fiscal Year ending June 30, 2014) and for FY4 through FY7, that is, for each succeeding Fiscal Year until the License Agreement expires; and

      (f)     pursuant to Section 7.6 of the License Agreement, the validity, construction and performance of the License Agreement, including its ongoing royalty payment obligations, shall be governed by and construed first in accordance with the federal laws of the United States to the extent federal subject matter exists, and second in accordance with the laws of the state of New York, exclusive of its choice of law rules.

## PRAYER FOR RELIEF

WHEREFORE, by virtue of the acts complained of above, Microsoft demands judgment in its favor and against Samsung:

a.    awarding $6,991,844.64 in damages for Samsung's breach of its contractual obligation to pay Microsoft interest on its late FY 2 net royalty payment;

b.    declaring that pursuant to Sections 3.1 and 3.2 of the License Agreement, the entities, assets and/or business units/divisions acquired in the Nokia Acquisition are "Grantees" under the License Agreement and are covered by the license granted in Section 3.1 of the License Agreement;

c.    declaring that with respect to the Samsung patents licensed in the License Agreement, the Nokia Acquisition does not give Samsung any basis to assert against Microsoft or any of its subsidiaries any patent infringement claims or to seek injunctive relief or additional royalties beyond those specified in the License Agreement, and enjoining Samsung from doing so;

d.    declaring that the Nokia Acquisition does not violate the anti-assignment provisions of either the License Agreement or the Collaboration Agreement;

e.    declaring that neither Sections 9.7 and/or 8.5 of the Collaboration Agreement, nor any provision of that Agreement or the License Agreement, provides Samsung with the right to terminate or

modify the License Agreement due to the Nokia Acquisition, and enjoining Samsung from terminating or attempting to modify the License Agreement on any of these grounds;

f.      declaring that the License Agreement remains in effect following the Nokia Acquisition, and Samsung therefore must pay Microsoft all royalty payments required by the License Agreement (with offsets only as permitted under that Agreement and the Collaboration Agreement), including for FY3 (defined in the License Agreement as the Fiscal Year ending June 30, 2014) and for FY4 through FY7, that is, for each succeeding Fiscal Year until the License Agreement expires;

g.      declaring that, pursuant to Section 7.6 of the License Agreement, the validity, construction and performance of the License Agreement, including its ongoing royalty payment obligations, shall be governed by and construed first in accordance with the federal laws of the United States to the extent federal subject matter exists, and second in accordance with the laws of the state of New York, exclusive of its choice of law rules;

h.      awarding costs and disbursements of this action;

i.      awarding prejudgment and post-judgment interest; and

j.      awarding such other and further relief as this Court may deem just and proper.

Dated: New York, New York
October 3, 2014

Respectfully submitted,

DECHERT LLP


By _____
Andrew J. Levander
Matthew L. Mazur
1095 Avenue of the Americas
New York, NY 10036
Tel: (212) 698-3500
Fax: (212) 698-3599
Email: andrew.levander@dechert.com
Email: matthew.mazur@dechert.com


Frederick G. Herold
DECHERT LLP
2440 W. El Camino Real, Suite 700
Mountain View, CA 94040
Tel: (650) 813-4930
Fax: (650) 813-4848
Email: frederick.herold@dechert.com

Robert A. Rosenfeld
ORRICK, HERRINGTON & SUTCLIFFE LLP
405 Howard Street
San Francisco, CA 94105
Tel: (415) 773-5700
Fax: (415) 773-5759
Email: rrosenfeld@orrick.com

John ("Jay") A. Jurata, Jr. ORRICK, HERRINGTON &
SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, D.C. 20005
Tel: (202) 339-8400
Fax: (202) 339-8500
Email: jjurata@orrick.com

Richard S. Goldstein
ORRICK, HERRINGTON & SUTCLIFFE LLP

51 West 52nd Street
New York, NY 10019
Tel: (212) 506-5000
Fax: (212) 506-5151
Email: rgoldstein@orrick.com

*Counsel for Plaintiffs*