UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICROSOFT CORPORATION AND MICROSOFT LICENSING GP, <br><br> Plaintiffs, <br><br> -against- <br><br> SAMSUNG ELECTRONICS CO., LTD., <br><br> Defendant. | Case No. 1:14-CV-6039 (JSR) <br><br> Hon. Jed S. Rakoff <br><br> **ANSWER TO AMENDED COMPLAINT AND COUNTERCLAIMS** |

Defendant Samsung Electronics Co., Ltd. ("Samsung"), by and through its undersigned attorneys, hereby submits its answer, affirmative defenses, and counterclaims to the Amended Complaint ("Amended Complaint") of Microsoft Corporation and Microsoft Licensing GP (together, "Microsoft"). Samsung denies each and every allegation not specifically admitted herein and states to each correspondingly numbered paragraph of the Amended Complaint as follows:

**ANSWER**

1. The allegations in the first sentence of paragraph 1 contain conclusions of law to which no response is required. To the extent that a response is required, Samsung denies the allegations in the first sentence of paragraph 1, except admits that Microsoft has asserted a breach of contract claim and seeks declaratory judgments in this action. Samsung denies the allegations in the remaining portions of paragraph 1, except admits that Microsoft and Samsung entered into the Confidential Patent Licensing Agreement ("PLA") and the Confidential Business Collaboration Agreement ("BCA," and together with the PLA the "Agreements"), effective as of July 1, 2011. Samsung respectfully refers the Court to those agreements for a true, correct, and complete statement of their terms.

2.      The allegations in paragraph 2 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 2.

3.      The allegations in paragraph 3 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 3.

4.      The allegations in paragraph 4 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 4, except admits that the quoted language appears in Section 7.6 of the PLA.

5.      Samsung lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 5.

6.      Samsung lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 6, except admits that Microsoft licenses certain patents in return for royalty payments.

7.      Samsung lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 7, except admits that Microsoft licenses certain Android-related patents in return for royalty payments.

8.      Samsung denies the allegations in paragraph 8, except admits the first sentence and that it is the world's largest producer of smartphones that use Android operating system and denies the rest of that sentence.

9.      Samsung denies the allegations in paragraph 9, except admits that Microsoft and Samsung entered into the PLA, effective as of July 1, 2011.  Samsung respectfully refers the Court to the PLA for a true, correct, and complete statement of its terms.

10.     Samsung denies the allegations in paragraph 10, except admits that Samsung made the royalty payments required under the PLA in Fiscal Year 1 and submitted a written Royalty Report, dated August 29, 2013, to Microsoft for Fiscal Year 2.

11.     Samsung denies the allegations in paragraph 11, except admits that Microsoft announced a transaction with Nokia Corporation's Devices & Services Business ("Nokia DSB") on September 3, 2013 (the "Nokia DSB Merger").  Further, Samsung lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in the second sentence of paragraph 11.

12.     Samsung denies the allegations in paragraph 12.

13.     The allegations in paragraph 13 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 13, except admits that it made the Fiscal Year 2 payment on November 29, 2013, under a reservation of rights.

14.     The allegations in paragraph 14 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 14.

15.     The allegations in paragraph 15 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 15.

16.     The allegations in paragraph 16 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 16.

17.     Samsung admits the allegations in paragraph 17.

18.     Samsung admits the allegations in paragraph 18.

19.     Samsung admits the allegations in paragraph 19.

20.     The allegations in paragraph 20 contain conclusions of law to which no response is required.

21.     The allegations in paragraph 21 contain conclusions of law to which no response is required.

22.     Samsung lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 22.

23.     Samsung lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 23.

24.     Samsung lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 24.

25.     Samsung admits the allegations in the first sentence of paragraph 25.  Samsung denies the allegations in the second sentence of paragraph 25.

26.     Samsung lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 26, except admits that it licenses certain Android-related patents from Microsoft under the PLA.

27.     Samsung lacks knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations in paragraph 27.

28.     Samsung denies the allegations in paragraph 28, except admits that it launched the Galaxy I7500 Android-based smartphone in 2009.

29.     Samsung denies the allegations in paragraph 29, except admits that Microsoft and Samsung entered into the PLA, effective July 1, 2011.

30.     Samsung denies the allegations in paragraph 30, except admits that the PLA has a seven-year term.

31.     Samsung denies the allegations in paragraph 31 and respectfully refers the Court to Section 1 of the PLA for a true, correct, and complete statement of the scope of the license.

32.     Samsung denies the allegations in paragraph 32, except admits that it made a Fiscal Year 1 royalty payment to Microsoft.  Samsung respectfully refers the Court to the BCA and PLA for a true, correct, and complete statement of their terms.

33.     The allegations in paragraph 33 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung respectfully refers the Court to the BCA and PLA for a true, correct, and complete statement of their terms.

34.     Samsung denies the allegations in paragraph 34, except admits that Samsung cross-licensed its patents to Microsoft.  Samsung respectfully refers the Court to the BCA and PLA for a true, correct, and complete description of their terms.

35.     Samsung denies the allegations in paragraph 35, except admits that the parties entered into the BCA.  Samsung respectfully refers the Court to the BCA for a true, correct, and complete statement of its terms.

36.     Samsung denies the allegations in paragraph 36 and respectfully refers the Court to the BCA and PLA for a true, correct, and complete description of their terms.

37.     Samsung denies the allegations in paragraph 37 and respectfully refers the Court to the BCA and PLA for a true, correct, and complete statement of their terms.

38.     Samsung denies the allegations in paragraph 38, except admits that Microsoft made an announcement regarding Nokia in February 2011.

39.      The allegations in paragraph 39 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 39, except admits that Microsoft announced a transaction with Nokia DSB on September 3, 2013, and that Microsoft closed the Nokia DSB Merger on April 25, 2014.

40.      Samsung denies the allegations in paragraph 40, except admits that the quoted language is found in Section 3.2 of the PLA.  Samsung respectfully refers the Court to the PLA for a true, correct, and complete statement of that agreement's terms.

41.      Samsung denies the allegations in paragraph 41.

42.      The allegations in paragraph 42 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 42, except admits that PLA Section 7.7 contains an anti-assignment provision.

43.      The allegations in paragraph 43 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 43, except admits that the quoted language is found in Section 9.7 of the BCA and that BCA Section 9.7 contains an anti-assignment provision.

44.      The allegations in paragraph 44 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 44.

45.      Samsung admits the allegations in paragraph 45.

46.      Samsung denies the allegations in paragraph 46, except admits that on September 11, 2013, Microsoft provided Samsung with the Fiscal Year 2 Annual Invoice requesting payment in the amount of $1,041,642,161.25.

47.     Samsung denies the allegations in paragraph 47, except admits that it paid the Fiscal Year 2 Annual Invoice on November 29, 2013, under a reservation of rights.

48.     Samsung denies the allegations in paragraph 48, except admits that the quoted language is found in PLA Section 4.5.  Samsung respectfully refers the Court to the PLA for a true, correct, and complete statement of that agreement's terms.

49.     Samsung denies the allegations in paragraph 49, except admits that it sent Microsoft letters on November 27, 2013, April 25, 2014, and June 13, 2014.

50.     The allegations in paragraph 50 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 50, except admits that Microsoft sent Samsung a letter on April 17, 2014.

51.     The allegations in paragraph 51 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 51.

### COUNT ONE

52.     Samsung repeats and alleges each and every response contained above as if fully set forth herein.

53.     The allegations in paragraph 53 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 53, except admits that Microsoft and Samsung entered into the PLA.  Samsung respectfully refers the Court to the BCA and PLA for a true, correct, and complete statement of their terms.

54.     The allegations in paragraph 54 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in

paragraph 54, except admits that it paid the Fiscal Year 2 Annual Invoice on November 29, 2013, under a reservation of rights.

55.     The allegations in paragraph 55 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 55.

56.     The allegations in paragraph 56 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 56.

57.     The allegations in paragraph 57 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 57.

58.     The allegations in paragraph 58 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 58.

## <u>COUNT TWO</u>

59.     Samsung repeats and alleges each and every response contained above as if fully set forth herein.

60.     The allegations in paragraph 60 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 60, except admits that an actual and justiciable controversy exists between Microsoft and Samsung with respect to their rights and obligations under the BCA due to the Nokia DSB Merger.

61.     The allegations in paragraph 61 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 61.

62.     The allegations in paragraph 62 contain conclusions of law to which no response is required.  To the extent that a response is required, Samsung denies the allegations in paragraph 62.

## SAMSUNG'S AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
### (Failure to Arbitrate)

63.     The claims asserted in the Amended Complaint are subject to arbitration.

### SECOND AFFIRMATIVE DEFENSE
### (Frustration of Performance)

64.     Microsoft's actions and omissions prevented, frustrated, and obstructed Samsung's performance under the PLA and BCA.  But for Microsoft's actions and omissions, Samsung was ready, willing and able to perform its obligations.

## SAMSUNG'S COUNTERCLAIMS

65.     Samsung respectfully submits that (i) Microsoft's claims in the Amended Complaint and Samsung's counterclaims are not properly before this Court, and (ii) pursuant to Samsung's motion to compel arbitration and stay this action, Microsoft's claims and Samsung's counterclaims should be decided by a panel of arbitrators under ICC rules.[1]  Nevertheless, to preserve its rights pending the outcome of that motion, Samsung asserts its counterclaims as set forth below.

---

[1] *See* Def.'s Notice of Mot. to Compel Arbitration and Stay the Case, *Microsoft Corp., et al. v. Samsung Electronics Co., Ltd.*, Index. No. 14-cv-6039 (JSR) (Dkt. No. 41) (Oct. 10, 2014).

## INTRODUCTION

66.     Samsung and Microsoft agreed in the Patent Licensing Agreement ("PLA") and Business Collaboration Agreement ("BCA") to cross-license their patents and collaborate in developing and marketing Windows-based smartphones.  Underlying those interconnected and mutually dependent agreements was the assumption that the parties were not competitors and would benefit from mutual cooperation:  Samsung manufactured and sold smartphones, while Microsoft supplied the operating systems and intellectual property used in smartphones.  But within three years of signing the PLA and BCA, Microsoft merged with a major Samsung competitor—Nokia's Devices and Services business ("Nokia DSB")—and began manufacturing its own smartphones.  In doing so, Microsoft violated the BCA's anti-assignment provision and denied Samsung the fruits of the parties' agreement.

67.     BCA Section 9.7 prohibits either party from assigning any rights under the agreement to a third party, and it defines a prohibited "assignment" to include any merger between Microsoft and a Samsung competitor.  Upon such an assignment, Sections 9.7 and 8.5 provide that Samsung may terminate both the BCA and PLA.  Microsoft triggered that termination right in April 2014 by merging Nokia DSB into Microsoft.  As part of that transaction, Microsoft abandoned the Nokia name, transferred key Nokia DSB executives and other employees to Microsoft, assumed all of Nokia DSB's liabilities, eliminated more than 10,000 Nokia DSB employees who were redundant with Microsoft employees, and worked to build Microsoft's presence and brand in the smartphone market.  As a result, Samsung is entitled to a declaratory judgment stating that it may terminate the BCA and PLA.

68.     Moreover, Microsoft's merger with Nokia DSB frustrated the purpose of the BCA and PLA.  At the time Samsung and Microsoft signed those agreements, they were not competitors and there were no concerns about coordinating marketing efforts or sharing

extremely sensitive information about product roadmaps and hardware features.  In other words, the PLA and BCA were not agreements between horizontal competitors; they embodied a collaboration between vertically-related entities.  But following the Nokia DSB Merger, Samsung and Microsoft are direct competitors who should be strenuously competing in the areas in which they previously agreed to collaborate.  Thus, the BCA and PLA are now incompatible with prudent business conduct under the Sherman Act.

## THE PARTIES

69.     Counterclaimant Samsung Electronics Co., Ltd. ("Samsung") is a Korean corporation, with its principal place of business at 416, Maetan-3-dong, Yeongtong-gu, Suwon-si, Gyeongigi-do, 443-742, South Korea.

70.     Counterclaim defendant Microsoft Corporation is a Washington corporation, with its principal place of business at One Microsoft Way, Redmond, Washington 98052.

71.     Counterclaim defendant Microsoft Licensing GP is a Nevada general partnership, with its principal place of business at 6100 Neil Road, Suite 100, Reno, Nevada 89511.

## JURISDICTION AND VENUE

72.     The Court has jurisdiction over this action under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, excluding interest and costs, and this action is between Plaintiffs, citizens of the United States, and Defendant, a citizen of Korea.

73.     The Court has personal jurisdiction over Microsoft by virtue of its initial complaint.

74.     A current, actual, and justiciable controversy exists between the parties, making a declaratory judgment action appropriate under 28 U.S.C. §§ 2201–02.

75.     Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b)–(c).

## FACTUAL BACKGROUND

### *The parties entered into the BCA and PLA, two interconnected agreements.*

76.     Samsung and Microsoft Corporation executed the BCA, effective as of July 1, 2011.

77.     Samsung, Microsoft Corporation, and Licensing GP executed the PLA, effective as of July 1, 2011.

78.     These two simultaneously executed agreements are interconnected and mutually dependent.  Samsung and Microsoft agreed in the PLA to cross-license their patent portfolios and release each other from any existing liability for patent infringement.  Samsung agreed to pay annual royalties to Microsoft for a seven-year period based on Samsung's per-unit sales of Android smartphones and tablets.  Microsoft, in turn, agreed to reduce Samsung's annual royalty payments under a fixed schedule of "Microsoft License Fee Credits."

79.     To further reduce Samsung's annual royalty payments, Microsoft also agreed to provide Samsung with "Success Credits" for meeting certain sales goals for Windows devices and "Collaboration Credits" for creating and executing a plan to develop and market Windows devices and for using Microsoft search services.  Both the "Success Credits" and the "Collaboration Credits" are to be offset against amounts owed by Samsung to Microsoft under the PLA, and must be reported to Microsoft on an annual "Royalty and Credit Calculation Report" pursuant to the BCA ("Royalty Report").  After receiving the Royalty Report, Microsoft is required to issue an "Annual Invoice" that includes, among other things, the net amount owed by Samsung for the fiscal year under the BCA and PLA.

80.     Under Section 3 of Exhibit B to the BCA, Microsoft is contractually obligated to engage in certain activities "to promote a competitive Windows Phone Software developer

ecosystem." Microsoft's obligations include investment in key applications and content and promotions designed to attract developers to the Windows Phone Software developer ecosystem, including guidance to convert from Android and iOS development systems, investment in websites for developers, and events and developer education.

81.    Although part of a single agreement between the parties, Microsoft insisted that the parties' agreement be set out in two documents because it did not want the net license royalty amount, after the application of the Success Credits and Collaboration Credits, to be made public in the event of litigation between Microsoft and third parties that would call for the disclosure of the licensing terms. As a consequence, the PLA contains the cross-license portion of the parties' agreement, while the BCA contains the collaboration component, including the terms related to the credits that would be applied against the royalties owed by Samsung to Microsoft under the PLA.

82.    Samsung would never have entered into the PLA without the BCA because the BCA provided the mechanism for bringing the net royalty fees to the level agreed to by the parties. This is reflected in BCA Section 1.3, which provides that the BCA "will not become effective until the PLA is executed," and by BCA Section 9.12, which integrates the terms of the BCA, the PLA, and the parties' non-disclosure agreement.

83.    Samsung has paid Microsoft in full for the amounts due under the BCA for the first two fiscal years of the agreement, ending June 30, 2012, and June 30, 2013, respectively. Because Samsung disputed the Fiscal Year 2 payment, no interest accrued. Samsung has complied with its obligations under the BCA for completing the Royalty Report for the third fiscal year of the agreement, ending June 30, 2014. The payment is not yet due because Microsoft has not yet met its obligation to send Samsung the corresponding Annual Invoice.

***BCA Section 9.7 contains***
***an anti-assignment provision.***

84.    Microsoft and Samsung agreed to an anti-assignment provision in Section 9.7 of

the BCA, which states as follows:

> No party may assign this Agreement, or any rights or obligations
> hereunder, whether by operation of law, contract or otherwise,
> including by way of a change of Control, except as expressly
> provided in this Section 9.7.  For purposes of this Agreement, an
> "assignment" by a party under this Section 9.7 includes each of the
> following: (a) a change of Control of a party; and (b) the sale or
> other transfer of any assets that are material to this Agreement
> (whether in a single transaction or series of transactions).  In
> addition, an "assignment" also includes the following where the
> assignment is to a competitor of the other party: (x) a change in
> beneficial ownership of such party of greater than 30% (whether in
> a single transaction or series of transactions) if the party is a
> partnership, trust, limited liability company or other like entity; (y)
> a merger of a party with a third party, whether or not the party to
> this Agreement is the surviving entity; and (z) the acquisition of
> more than 30% of any class of such party's voting stock (or any
> class of non-voting security convertible into voting stock) by a
> third party (whether in a single transaction or series of
> transactions).  A reorganization of a party pursuant to an internal
> corporate restructuring, however, will not be deemed to be an
> assignment under this Agreement.  Upon the occurrence of any
> prohibited assignment, the non-assigning party will be entitled to
> terminate this Agreement immediately upon written notice (in
> addition to any other remedies to which the non-assigning party
> may be entitled under this Agreement, at law or in equity).  Any
> assignment in violation of this Section 9.7 will be void.

85.    The BCA contains a termination provision in Section 8.5.  That provision allows

Samsung to unilaterally terminate the PLA in the event that Samsung decides to terminate the

BCA pursuant to the anti-assignment language in Section 9.7.  BCA Section 8.5 states in full that

"If Samsung terminates this Agreement pursuant to Section 9.7, then Samsung may terminate the

PLA by giving Microsoft written notice terminating the PLA as part of, or concurrently with, its

notice terminating this Agreement in accordance with Section 9.7."

14

*Microsoft merged with Nokia DSB.*

86.     On September 3, 2013, Microsoft announced that it would enter the smartphone manufacturing business through a transaction with Nokia DSB (the "Nokia DSB Merger"). After that announcement, Samsung wrote Microsoft on several occasions to notify it that the Nokia DSB Merger violated various provisions in the parties' agreements.

87.     Samsung and Microsoft engaged in extensive discussions about the dispute through letters and meetings.  While that process was ongoing, Microsoft filed this lawsuit.

88.     On April 25, 2014, Microsoft announced the closing of the Nokia DSB Merger. At that time, Nokia DSB was not a single corporation, it was a collection of subsidiaries and assets.  Microsoft thus merged those assets and subsidiaries into its existing corporate structure. Microsoft also assumed all of Nokia DSB's liabilities.

89.     Since the Nokia DSB Merger, Microsoft has abandoned the Nokia brand and worked to complete the combination of the two businesses into one.  For example, a September 2, 2013 e-mail from then-Microsoft-CEO Steve Ballmer, which is publicly available on Microsoft's website, outlines the Microsoft-Nokia integration approach and notes "[i]t is very important that we pursue a unified brand and advertising strategy as soon as possible."[2]  In that same e-mail, Mr. Ballmer states:

> Finance, Legal, HR, Communications, DX / Evangelism, Customer Care and Business Development will integrate functionally at Microsoft.  Sourcing, customer logistics and supply chain will be part of Stephen [Elop]'s Devices organization.  ICM / IT will also integrate functionally for traditional IT roles.  We will need to work through the implications for factory systems given the differing manufacturing processes and systems at both Nokia and Microsoft.

---

[2]   http://www.cnet.com/news/ballmers-e-mail-to-microsoft-employees-about-nokia-deal/

The e-mail further explains that "[w]e plan to pursue a single set of supporting services for our devices, and we will figure out how to combine the great Nokia efforts into our Microsoft services as we go through the integration process."

90.     In its disclosures of forward looking statements, Microsoft has represented to the Securities and Exchange Commission that "[t]he potential risks and uncertainties include, among others, that the expected financial and other benefits from the Nokia transaction may not be realized, including because of . . . our effectiveness in integrating the Nokia Devices & Services business with Microsoft's businesses."[3]

91.     In a September 3, 2013 conference call with investors to discuss the Nokia DSB Merger, Mr. Ballmer stated that the Nokia team "now becomes part of Microsoft."[4]  In addition, Mr. Ballmer stated that "[w]e have a structure for the integration" and spoke of the "integrated devices organization" and that "[w]e will consolidate marketing as well as the development of software services."[5]  Mr. Ballmer emphasized that "we talk about one brand and the unified voice to the market."[6]  While discussing specific products, Mr. Ballmer noted that "as two companies, there's always some lines along which it's hard to innovate. . . . I think as one company we would have doubled down . . . and made an even greater range of software and services investments around the core hardware platform."[7]

---

[3]   *See* Microsoft's Sept. 2, 2013 Current Report (Form 8-K) Ex 99.1 at 4.

[4]   *See* Sept. 3, 2013 Tr. of Microsoft Nokia Transaction Conference Call at 7, *available at* https://view.officeapps.live.com/op/view.aspx?src=http://www.microsoft.com/investor/down loads/events/Microsoft_Nokia_Transaction.docx

[5]   *Id*. at 12.

[6]   *Id*. at 17.

[7]   *Id*.

92.     In that same conference call, Stephen Elop, who as part of the Nokia DSB Merger became the Vice President of Microsoft's Devices & Services business, listed "bringing our teams together . . . through unified branding and marketing" as a benefit of the merger.[8]

93.     A July 17, 2014 e-mail from Microsoft CEO Satya Nadella to "All Employees," which Microsoft made publicly available on its website, states that "we are working to integrate the Nokia Devices and Services teams into Microsoft."[9]

94.     As a result of the Nokia DSB Merger, approximately 25,000 employees were transferred to Microsoft from Nokia, including approximately 4,700 employees in Finland.[10]  In addition, key Nokia executives stepped down from and transferred to Microsoft on April 25, 2014, including Stephen Elop, Chief Executive Officer; Jo Harlow, Executive Vice President of Smart Devices; Juha Putkiranta, Executive Vice President of Operations; Timo Toikkanen, Executive Vice President of Mobile Phones; and Chris Weber, Executive Vice President of Sales and Marketing.[11]

95.     In July 2014, Microsoft announced it was terminating approximately 12,500 former employees of Nokia DSB.[12]  Many of those employees worked in business areas, such as finance or human resources, that Microsoft had prior to the merger and they were therefore redundant of existing Microsoft employees.

---

[8]  *Id*. at 12.

[9]  http://www.microsoft.com/en-us/news/press/2014/jul14/07-17announcement1.aspx.

[10]  *See* http://news.microsoft.com/2014/04/25/microsoft-officially-welcomes-the-nokia-devices-and-services-business/; Nokia Corp. Sept. 3, 2013 Report of Foreign Private Issuer (Form 6-K) at 3.

[11]  *See* Nokia Corp. Apr. 25, 2014 Report of Foreign Private Issuer (Form 6-K) at 2; Nokia Corp. Annual Report for the Fiscal Year ending Dec. 31, 2012 (Form 20-F) at 138–41.

[12]  *See* http://news.microsoft.com/2014/07/17/stephen-elops-email-to-employees/.

96.     Microsoft agreed to convert certain Nokia stock options to Microsoft restricted stock units and to assume all of Nokia DSB's liabilities, including vendor and supply contracts and public or private debt.  The assumption of those liabilities was necessary for Microsoft to continue Nokia DSB's business uninterrupted.

97.     Today, Nokia DSB does not exist as a standalone company or a Microsoft subsidiary or affiliate (although some former Nokia DSB subsidiaries appear to still exist). Rather, Nokia DSB has been fully merged into Microsoft.

98.     A good illustration of the nature of the complete merger of Nokia DSB into Microsoft is Nokia DSB's former web address at www.nokia.com, which presents an announcement that "***Nokia is now Microsoft***."

*Microsoft's merger with Nokia DSB*
*violates BCA Section 9.7.*

99.     BCA Section 9.7 prohibits either party from assigning "any rights or obligations hereunder, whether by operation of law, contract or otherwise, including by way of a change of Control."  Under that provision, an "assignment" includes any "merger of a party with a third party," where the merger is with a "competitor of the other party."

100.     Microsoft violated BCA Section 9.7 by merging with Nokia DSB, which was a direct Samsung competitor in the smartphone market, thus triggering Samsung's termination rights under that provision.

101.     The BCA and PLA were premised on the assumption that Microsoft and Samsung were not competitors and had complementary businesses.  By merging with Nokia DSB, Microsoft not only became a Samsung competitor, it also (i) supplied Nokia DSB a license to use Samsung's patents in direct violation of the objective intent of Section 9.7, and (ii) incentivized Microsoft to promote its own smartphones over those manufactured and sold by Samsung.

*The Nokia DSB Merger frustrated*
*performance under the parties' agreements*
*by destroying their incentive to collaborate.*

102.    At the time Samsung and Microsoft entered into the PLA and BCA, Samsung

manufactured and sold smartphones to retailers and mobile operators.  Microsoft did not

manufacture smartphones.

103.    Under the PLA and BCA, Microsoft agreed to provide Samsung with inputs for

smartphones, including patents for applications like the Android operating system, and to

collaborate with Samsung on the development and marketing of Windows phones.  This made

business sense for both parties.

104.    But by beginning talks with Nokia Corp. about merging Nokia DSB into

Microsoft's existing business, and by later entering into the Nokia DSB Merger, Microsoft

created a conflict of interest that breached the covenant of good faith and fair dealing:  rather

than fulfilling its contractual obligation to develop the Samsung Windows Phone platform under

the BCA, Microsoft put its energies into merging with a smartphone business that competes

directly with Samsung's.  Thus, while Samsung entered into the BCA with the expectation that

Microsoft would have the incentive to develop the Samsung Windows Phone platform,

Microsoft's merger with Nokia's smartphone business destroyed those incentives.  Microsoft is

now a major Samsung competitor and is working to develop and promote its own smartphone

business, not the Samsung Windows Phone platform.  Microsoft therefore has a disincentive to

promote Samsung's devices, because that promotion would come at the expense of Microsoft's

own hardware offerings.  It is thus impossible for Microsoft to faithfully implement, without

reservations or conflicting interests, Microsoft's obligations under the PLA and BCA, since

doing so would adversely affect Microsoft's own prospective corporate and financial interests.

105.    The PLA and BCA were never intended to be agreements between competitors. Rather, the agreements were intended to embody a collaboration between a manufacturer and a supplier.  This is demonstrated by the joint marketing and development commitments at the heart of the BCA, which the parties viewed as key to increasing the market share of Samsung Windows Phones.  The BCA's joint marketing commitments require Samsung to work with Microsoft to prepare an annual marketing plan for Windows phones (the "Annual SWP Marketing Plan") and to "use commercially reasonable efforts to comply with" that plan.  And the BCA's joint development commitments require Samsung and Microsoft to prepare an annual product development plan (the "Annual SWP Development Plan") that identifies, among other things, "Samsung's roadmap for specific Samsung Windows Phones" and the development endeavors that are under consideration for those phones.

106.    Sharing such highly confidential and competitively sensitive information made sense before the Nokia DSB Merger because Microsoft and Samsung were not competing in the marketing or development of smartphones—they were collaborating.    But after the Nokia DSB Merger, Samsung has been put in the untenable position of being asked to provide that information to a major competitor.  That is not what the parties intended or envisioned when the BCA was signed, and the inability to share confidential information has dramatically altered the dynamic between the parties and frustrated their performance under the BCA.

107.    Samsung raised these issues with Microsoft immediately after the Nokia DSB Merger.  On April 13, 2014, Samsung sent Microsoft's Deputy General Counsel a letter enclosing the Third Annual Samsung Windows Phone Development Plan and stating:

> **As a result of Microsoft's acquisition of Nokia's former mobile business, which has now been consummated, Samsung cannot continue to disclose to Microsoft certain confidential information that Samsung considers commercially or technically sensitive**

*under the BCA as presently in effect*.  This concern is heightened by recent press reports that Microsoft has already begun the process of integrating Nokia's former mobile business into Microsoft's handset business while at the same time, according to such press reports, Microsoft has begun to compete directly with Samsung for emerging market customers - for example, by recently launching its first Android smartphone, "Nokia X2", which Microsoft is making available in select markets in Europe.

*As such, even though Samsung very much wishes to share the commercially or technically sensitive information with Microsoft, it is unlawful for Samsung to do so, as Microsoft and Samsung now directly compete in the mobile handset business*.

108.    Microsoft has offered no meaningful response to Samsung's concerns, and there is no way to reconcile the requirements of the BCA and PLA with the fact that the parties are now competitors.

*The Nokia DSB Merger frustrated performance under the parties' agreements by creating an unreasonable risk of antitrust liability.*

109.    As a result of Microsoft's merger with Nokia DSB, Microsoft is now a horizontal competitor to Samsung in the smartphone market, because it competes directly with Samsung in selling phones to retailers and mobile operators.

110.    The PLA and BCA were never intended to be agreements between horizontal competitors.  Rather, the agreements were intended to embody a collaboration between vertically-related entities.

111.    As noted above, the BCA's joint marketing commitments require cooperation between Samsung and Microsoft as to advertising commitments with retailers and others, including for example agreeing to "levels of advertising."  Section 4.1 of Exhibit B to the BCA requires Samsung to "develop and use commercially reasonable efforts to comply with a marketing plan" dedicated to Samsung Windows Phones for each fiscal year ("Annual SWP Marketing Plan").

21

112.    These marketing provisions take on new meaning after Microsoft's merger with

Nokia DSB, as they now denote overt coordination between competitors with respect to dealings

with third parties.  For example, the BCA requires that "[e]ach Annual SWP Marketing Plan will

be developed by Samsung with Microsoft's input."  In turn, the Annual SWP Marketing Plan

includes"[1] strong retail execution with commitment to specific activities such as retail sales

personnel (RSP) incentives and training, device seeding, hero device placement, and live

devices, [and] [2] creation and promotion of hero status devices . . . with certain mobile operators

during applicable launch periods."

113.    The Annual SWP Marketing Plan, a plan that is to be the product of coordination

between Microsoft and Samsung, also covers how Samsung allocates advertising and marketing

incentives to third parties by discussing "differentiating levels of above-the line advertising and

other demand generation activities," and the quality of customer experiences by covering

"below-the-line activities with mobile operators and retailers."

114.    These marketing provisions directly implicate how Samsung sells its Windows

phones, and gives Microsoft the contractual right to collaborate with Samsung.  Before

Microsoft's merger with Nokia DSB, these provisions between Microsoft, an input supplier, and

Samsung, a downstream seller, comported with United States antitrust laws.  After the Nokia

DSB Merger, the agreements, now between competitors, invite charges of collusion.  No

reasonable business would knowingly undertake the risk of contractually obligating itself to

coordinate and collaborate with a competitor—particularly, as here, with respect to setting third-

party incentives and controlling the "out of box" experience of a competitor's products.

115.    Additionally, the sharing of product roadmap information, which the BCA

contemplates (Sections 2.1 and 2.2 of Exhibit B), now takes on a new and dangerous meaning

when viewed through the lens of antitrust law:  these provisions could give rise to accusations that two handset competitors, Microsoft and Samsung, are engaged in market allocations in terms of how and when products are developed and distributed to the market.  This problem did not exist prior to Microsoft's merger with Nokia DSB.  Rather, the problem, like the other antitrust problems described above, arose solely from Microsoft's merger with Nokia DSB.

116.    The same is true of the BCA's requirement that Samsung and Microsoft form a Samsung Windows Phone Development Committee comprised of executives from both companies.  Those executives are tasked with meeting quarterly to review and discuss the implementation of the parties' Annual Samsung Windows Phone Development Plan, which identifies features that the parties anticipate adding to their hardware and software offerings.  Such meetings between executives were not problematic before the Nokia DSB merger, but now raise serious antitrust concerns, as the parties should be competing—not collaborating—on their hardware offerings.

117.    The Nokia DSB Merger frustrated the purpose and performance of the BCA because compliance would create an unreasonable risk of antitrust exposure.  Among other things, the BCA's marketing and development collaboration provisions now create a serious risk that the parties will be accused of colluding in two areas in which they should be strenuously competing.  Consequently, the Nokia DSB merger renders the BCA's marketing and development collaboration provisions incompatible with prudent business conduct under the Sherman Act's proscription against any "contract, combination . . . or conspiracy, in restraint of trade or commerce . . . ."  *See* 15 U.S.C. § 1.

## FIRST COUNTERCLAIM

## DECLARATORY JUDGMENT
### (28 U.S.C. §§ 2201–2202)

118.   Samsung repeats and alleges paragraphs 65 through 117 as if fully set forth herein.

119.   An actual and justiciable controversy exists between Microsoft and Samsung with respect to their rights and obligations under the BCA due to Microsoft's merger with Nokia DSB.

120.   Samsung has fully performed under both the BCA and PLA.

121.   Microsoft's merger with Nokia DSB triggers BCA Section 9.7 because Nokia DSB was a direct Samsung "competitor" in the smartphone market.  As a result, Samsung has the right under BCA Section 9.7 to terminate the BCA and also the right under BCA Section 8.5 to terminate the PLA.

122.   Absent the declaratory relief requested from this Court, Samsung faces the immediate risk of either having to perform under two contracts—the BCA and PLA—that it is legally entitled to terminate, or to stop performance and potentially face further litigation.

123.   Samsung therefore seeks entry of a judgment declaring that it has the right to terminate both the BCA and the PLA.

## SECOND COUNTERCLAIM

## BREACH OF THE IMPLIED COVENANT
## OF GOOD FAITH AND FAIR DEALING

124.   Samsung repeats and alleges paragraphs 65 through 123 above as if fully set forth herein.

125.   The BCA and PLA are valid and enforceable contracts.

126.     Samsung has performed all of its obligations pursuant to the BCA and PLA and has not committed any breach of the BCA or PLA.

127.     Included in the BCA and PLA is an implied covenant of good faith and fair dealing through which the parties agreed to collaborate both in Samsung developing and marketing certain Windows devices and Microsoft providing search services for certain Samsung devices.  The covenant encompasses a pledge that neither party shall do anything that will have the effect of destroying or impairing the right of the other party to receive the fruits of the contract.

128.     Microsoft intentionally breached the implied covenant of good faith and fair dealing by, among other things, merging with Nokia DSB, thereby creating a direct competitor relationship between Microsoft and Samsung that (i) deprived Samsung of the fruits of the BCA and PLA—*i.e.*, a collaborative relationship with a non-competitor; (ii) rendered the parties' marketing and development collaboration agreements incompatible with prudent business conduct under the Sherman Act; and (iii) created an unreasonable risk of antitrust exposure.

129.     As a direct and proximate cause of Microsoft's intentional, willful, and bad-faith violation of the BCA's implied covenant of good faith and fair dealing, Samsung suffered damages in an amount to be determined at trial, including attorneys' fees and other expenses pursuant to BCA Section 9.6.

## PRAYER FOR RELIEF

WHEREFORE, Samsung prays for the following judgment against Microsoft:

A.      a declaration that Samsung may terminate the BCA and PLA pursuant to
        BCA Sections 9.7 and 8.5;

B.      damages in an amount to be determined at trial for Microsoft's breach of
        the covenant of good faith and fair dealing and an order from the Court
        declaring that as a consequence of that breach Samsung is entitled to
        terminate the BCA and PLA;

C.      judgment dismissing Microsoft's claims for relief; and

D.      costs, attorneys' fees, and such other and further relief as this Court deems
        just and proper.

## JURY DEMAND

Samsung hereby demands a trial by jury as to all issues so triable.

Dated:  New York, New York
          October 30, 2014

Respectfully submitted,

O'MELVENY & MYERS LLP


By:  /s/ George A. Riley

George A. Riley (*pro hac vice*) (griley@omm.com)
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone:  (415) 984-8700
Facsimile:   (415) 984-8701

Andrew Frackman (afrackman@omm.com)
Gary Svirsky (gsvirsky@omm.com)
Brad M. Elias (belias@omm.com)
Jeffrey A. N. Kopczynski (jkopczynski@omm.com)
7 Times Square
New York, New York 10036
Telephone:  (212) 326-2000
Facsimile:   (212) 326-2061

Ryan K. Yagura (*pro hac vice*) (ryagura@omm.com)
400 South Hope Street, 18th Floor
Los Angeles, California 90071
Telephone:  (213) 430-6000
Facsimile:   (213) 430-6407

Ian Simmons (*pro hac vice*) (isimmons@omm.com)
1625 Eye Street, NW
Washington, DC 20006
Telephone:  (202) 383-5300
Facsimile:   (202) 383-5414

John Kappos (*pro hac vice*) (jkappos@omm.com)
610 Newport Center Drive, 17th Floor
Newport Beach, California 92660
Telephone:  (949) 823-6900
Facsimile:   (949) 823-6994

*Attorneys for Defendant*
*Samsung Electronics Co., Ltd.*